**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| In re:<br><br>JAN ALVA MILLER,<br><br>        Debtor(s). | Case No. 19-00218-GS<br>Chapter 7 |
| SYNDA BELTRAN and CHRISTOPHER BALL,<br><br>        Plaintiff(s),<br><br>   v.<br><br>JAN ALVA MILLER,<br><br>        Defendant(s). | Adversary No. 19-90008-GS |

## MEMORANDUM DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The motions before the court represent the worse of kitchen sink litigation. The litigants are continuing what appears to be longstanding family animosity that has now progressed into a challenge to the dischargeability of debts arising from defendant/debtor Jan Miller's administration of the Bryce E. Miller and Ella Beth Miller Trust Agreement Dated May 2, 1996 ("Trust"). The plaintiffs, Miller's sister and nephew ("Plaintiffs"), charge her with defalcation while acting as trustee of the Trust, in which they were beneficiaries. They contend that the resulting debt is nondischargeable under 11 U.S.C. § 523(a)(4). Miller opposes Plaintiffs' motion for summary judgment (Adv. ECF No. 15) (Motion), and has cross-moved for summary judgment, albeit for claims under § 523(a)(6) (Adv. ECF No. 23) (Cross Motion).

1

The parties present winding narratives in support of their positions.  In particular, the affidavits from Miller and Beltran are rife with hearsay.  Moreover, much of the hearsay is irrelevant as Plaintiffs' claims are directed towards Miller's administration of the Trust, whereas much of their affidavits are dedicated to matters that appear related to Miller's administration of their father's probate estate.  The relationship between the different entities is never clarified, and Plaintiffs never articulate a basis in fact or law for claims relating to the administration of the probate estate.

Beltran and Miller are sisters.  Ball is Beltran's son and Miller's nephew.  All of them are beneficiaries of the Trust, as are Miller's two children.  The two sisters are each entitled to 35% of any distribution of the Trust's assets.  Their children are each entitled to 10% of the assets.

Beltran's and Miller's father passed away on August 19, 2014.  Miller was appointed as trustee for the Trust.  The Trust's assets were comprised primarily of a condominium in Alabama where their father had lived, checking and savings accounts, an investment account with Raymond James, and what appear to be insurance policies.  At the time she became trustee, it appears Miller was living in Alaska.  Miller was also appointed as the personal representative of her father's estate.

The relationship between Beltran and Miller falls somewhere between strained and adversarial.  The record includes emails between the sisters, including Miller's efforts to apprise Beltran of the Trust's assets, and Beltran's questions concerning those assets.

Miller retained counsel for the Trust within several weeks of her father's passing.  An email dated September 15, 2014, from Miller to Beltran shows that the Trust promptly liquidated the stocks held in the Raymond James account and listed the balance in that account as of the date of the email. Additional emails reflect a rapid deterioration of the sisters' relationship.  On December 3, 2014, Beltran and the Trust's attorney exchanged emails addressing Beltran's questions concerning the Trust.  Eight days later, Beltran emailed the attorney accusing the attorney of "ducking" her.  The

attorney answered roughly a week later, noting that she was responding to Beltran per "your request that Jan not contact you and/or Chris directly."

In early March 2015, Beltran sued Miller in Alabama state court to remove her as trustee. At the end of March 2015, the Trust began making distributions. In 2015, the Trust made distributions in March, two distributions in July, and a payment to each beneficiary in August and October. A final distribution was made to the beneficiaries in late November and early December, though the amount paid to Beltran was slightly less than the payment to Miller, and the amount to Ball was slightly less than that paid to Miller's children.

In 2016, the parties to the Alabama lawsuit reached a settlement as part of a mediation. The Alabama court approved the settlement on October 26, 2016. This did not end the dispute. In March 2017, Beltran moved the Alabama court for relief from the settlement on the basis that it was substantially less than what was represented at the mediation. Miller never responded and on October 17, 2017, the state court entered its order granting Beltran's motion for relief from the settlement. In June 2018, Beltran filed a motion seeking sanctions against Miller in the Alabama case. Again, Miller did not appear or oppose the motion for sanctions. On November 12, 2018, the Alabama court entered its Order on Motion for Sanctions in which it entered judgment against Miller as a sanction for failing to respond to discovery requests which sought "an accounting of expenditures from the Family Trust for the preceding 12 months." ECF No. 17-12 at 3. Based on Miller's failure to respond to the interrogatories, the court entered default judgment against Miller and in favor of Beltran for $45,800, and in favor of Ball in the amount of $13,100. The court also "taxed" attorney fees against Miller in favor of Beltran and Ball in the amount of $24,000.

According to Plaintiffs, they began efforts to collect the judgment in 2019. On July 15, 2019, Miller voluntarily filed her chapter 7 petition. Plaintiffs timely objected to the dischargeability of

3

debts owed to them under § 523(a).  Plaintiffs' complaint is entitled "Complaint to Determine

Dischargeability of Debt (§ 523(a)(4) and (6))" ("Complaint").  However, the substance of the

Complaint appears to be focused upon § 523(a)(4).  There is no citation to § 523(a)(6), or cause of

action pled, within the body of the Complaint.

Plaintiffs filed their Motion on August 10, 2020.  Again, Plaintiffs have focused on

nondischargeability of debt under § 523(a)(4).  Plaintiffs contend that Miller acted culpably and that

she cannot rely upon the advice of counsel to defend her actions as trustee.

## Argument

### I.     Plaintiffs' Motion for Summary Judgment.

Section 523(a)(4) excepts from discharge any debt owed by an individual debtor that is "for

fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C.

§ 523(a)(4).  As noted by Plaintiffs, to state a claim under § 523(a)(4) they must allege that "an

express trust existed, the debt was caused by fraud or defalcation, and the debtor acted as a fiduciary

to the creditor at the time the debt was created." *In re Niles,* 106 F.3d 1456, 1459 (9th Cir. 1997).

Defalcation is generally considered to involve a misappropriation of trust funds or money held in any

fiduciary capacity. *Lewis v. Scott (In re Lewis),* 97 F.3d 1182, 1186 (9th Cir. 1996).  But defalcation

also includes a "failure by a fiduciary to account for money or property that has been entrusted to

him." *Pemstein v. Pemstein (In re Pemstein),* 492 B.R. 274, 282 (B.A.P. 9th Cir. 2013) (citing

*Woodworking Enter., Inc. v. Baird (In re Baird),* 114 B.R. 198, 204 (9th Cir. 1990)). Once a creditor

has shown that the debtor is a fiduciary to whom funds have been entrusted, the burden shifts to the

fiduciary to account fully for all funds received.  *Niles*, 106 F.3d at 1462.

Importantly, to satisfy the requirements of § 523(a)(4), a debtor must intentionally commit

the wrongful acts.  As explained by the Supreme Court,

4

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). *See id.*, § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'wilful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.*, § 2.02(2)(c), at 226 (emphasis added).

*Bullock v BankChampaign, N.A.*, 569 U.S. 267, 273-74 (2013).

In their Motion, Plaintiffs generally cite provisions under the Alabama Trust Code and the Trust agreement that imposed fiduciary obligations upon Miller. That Miller served as a fiduciary of the Trust while acting as trustee is not disputed. Similarly, Plaintiffs note that Miller was under an obligation to act in good faith, respond to requests from beneficiaries, and account for Trust assets. Again, this is not disputed. Plaintiffs specifically direct the court to Title 19, Chapter 3B, Alabama Trust Code, § 19-3B-205(a), which provides that "upon petition of an interested party, a court may order a trustee to render an accounting of the trustee's administration of a trust and require a partial or final settlement thereof." Plaintiffs further note that common law places similar obligations upon a trustee.

Against this general discussion of law, Plaintiffs contend that Miller breached her fiduciary duties by: (1) not providing annual reports; (2) not providing beneficiaries with information; (3)

failing to keep adequate records of her administration of the Trust; (4) failing to accurately account for her expenses and disbursements; (5) improperly failing to pay Plaintiffs distributions that were paid to Miller; (6) improperly using paid personal expenses from the Trust; and (7) failing to keep the beneficiaries reasonably informed.  While it is easy to summarize the general outlines of Plaintiffs' claims, it is considerably more difficult to pin down their specific claims and the related evidence supporting those claims and the resulting damages.

Plaintiffs generally maintain that Miller failed to keep them informed of the Trust's assets, and failed to account for those assets.  However, Miller has provided evidence that she advised Plaintiffs of the Trust assets and attempted to answer Beltran's inquiries, often through counsel as the sisters' relationship deteriorated.  Plaintiffs now challenge the sufficiency of Miller's efforts.  To the extent that Plaintiffs seek some general finding that Miller breached her fiduciary obligations to provide information and account, summary judgment is not warranted as there is a genuine dispute as to the sufficiency of Miller's accounting and information provided.  Moreover, as the parties have briefed, Miller retained, and relied upon, the advice of counsel.  The significance of the Trust's counsel's advice remains a disputed question of fact as well.

Plaintiffs have also raised a number of specific matters within their Motion and reply (Adv. ECF No. 28).  However, they have done so without tying facts to specific law or claims.  Some of the specific items are raised in the discussion of facts, while other specific items are raised within their argument.  This has made it difficult to ascertain whether Plaintiffs have met their initial burden of establishing a prima facie question, and identifying whether no genuine dispute exists concerning material facts.  Complicating matters, Miller has generally opposed the Motion, though she offers a somewhat more detailed factual narrative in her affidavits.  Her briefing, however, does not really tie those factual allegations to her opposition.  In both instances, this court is not required to scour

the evidence presented apart from the briefing to resolve the motions for summary judgment.  *See*

*Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

### A.      Asymmetric Distributions.

Plaintiffs contend that the Trust's distributions disproportionately favored Miller and her

children.  For example, Plaintiffs maintain that Miller paid herself a distribution of $7,000 without

making a similar distribution to Beltran.  Miller states in her affidavit that she wrote a similar check

to Beltran, though she cannot find it.  This raises a genuine dispute of fact that precludes summary

judgment.

### B.      Exorbitant Fees and Expenses.

Similarly, Plaintiffs contend that Miller used Trust assets to pay herself exorbitant fees and

personal expenses.  Yet, Plaintiffs do not consistently quantify those amounts, or provide the detail

to establish the amounts they sometimes state.  Moreover, their disagreement with the payments does

not establish that they are wrongful or that Miller culpably used Trust assets for purposes of §

523(a)(4).  Plaintiffs seem to accept the premise that Miller was due some fees for administering the

Trust.  It is impossible to tell then what fees are over the line and exorbitant.  That matter requires

weighing of the evidence at trial and precludes summary judgment.

That said, the accountings submitted detail numerous payments that appear to be for personal

matters rather than Trust business. Plaintiffs largely make this argument in one sentence and a

footnote in their Motion.  They also reference the claim in their damage calculation.  Miller did not

respond to this argument or address her use of the Trust to pay for these items, which included

payments to: QVC; Amazon; HSN; Sears; Fred Meyer; Three Bears; Marriott Anchorage; Geneva

Woods; Bush Bottle Bin; Copper Valley; Tazlina River T; Cash FNBA Glenallen; Wells Fargo Ccg;

and Dr. T.J. Schaperk.  When asked at oral argument about the payments of personal expenses,

Miller's counsel stated that the payments did not amount to enough to qualify as a breach of her fiduciary duty and suggested that it was not this court's job to nit-pick over the Trust's payments. The court disagrees. To the extent that Miller used Trust assets to pay her personal expenses, that is the quintessential breach of fiduciary duty. *See Schneidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 624 (Bankr. N.D.N.Y. 2010) ("With respect to the kind of conducts that constitute defalcation, bankruptcy courts have generally held that commingling, failing to account for, or misdirecting funds may suffice."). The challenged payments identified as personal exceed $5,000, and may result in an additional distribution to Plaintiffs of $2,321.46. These payments are only part of several other challenges raised by Plaintiffs. While Miller characterizes this as nit-picking, Plaintiffs view it as a pattern of breaches of Miller's fiduciary duty that when combined result in over $90,000 in damages.

Miller has offered no explanation for these payments in her two affidavits. Rather the only suggestion of an explanation is that she repaid the personal expenses.[1] This argument was not developed in the briefing or affidavits. Accordingly, Miller has failed to provide specific facts to controvert Plaintiffs' evidence that she used Trust assets to pay personal expenses in breach of her fiduciary duty. Without any evidence from Miller, the payment of her personal expenses establishes a willful misuse of Trust assets that has resulted in a loss of those assets. That loss establishes harm to the Trust in the amount of $5,158.79 as set forth in footnote 101 of the Motion and Exhibit 5 (Adv. ECF No. 16-6).

---

[1] The court notes that the alleged repayment does not necessarily absolve Miller from a finding that she breached her fiduciary duty as trustee of the Trust. *See Otto v. Niles (In re Niles),* 106 F.3d 1456, 1463 (9th Cir. 1997) (citing Restatement (Second) of Trusts, § 170, cmt. 1) ("A trustee may, in some circumstances, breach the fiduciary duty of loyalty by taking a loan from the trust.")

It remains, however, to be seen whether the Trust's loss of $5,158.79 necessarily harmed Plaintiffs. First, Plaintiffs assume that these funds would have been disbursed to the beneficiaries, and that there were no other valid Trust expenses that remain unpaid. There is no evidence to support this conclusion, and given the vagueness of the evidence overall, the court is unwilling to make that assumption. Second, Miller has intimated that she repaid these payments to the Trust. But she has not submitted any specific evidence of this or developed the argument. Such information may be within her accounting, but it is not for the court to scour that document and make that argument for her.

In sum, Plaintiffs have established that Miller used $5,158.79 of Trust assets to pay her personal expenses. The court will enter summary judgment that this fact is established, but require proof at trial that these funds would have been distributed to the beneficiaries. The court shall also permit Miller to present evidence that she repaid these amounts, in which instance Plaintiffs would have suffered no harm.

### C.     Attorney Fees Paid by the Trust.

Plaintiffs also contend that Miller is responsible for a total of $35,000 paid to the Trust's attorneys for legal fees. They challenge separate checks dated October 19, 2015, and January 19, 2016. In support of this argument, Plaintiffs cite Alabama Trust Code § 19-3B-709(a)(1) as permitting a trust to pay expenses incurred in defending litigation involving the trust unless the trustee is determined to have willfully or wantonly committed a material breach of the trust. Implicit in their argument, Plaintiffs contend that Miller willfully or wantonly committed a material breach of trust. However, Plaintiffs have only argued that Miller generally breached her Trust duties. As stated above, the court cannot find that there is no genuine dispute as to whether Miller generally breached her fiduciary duties, much less that she did so in a willful or wanton manner. Indeed,

Plaintiffs offer no analysis on this topic.  Accordingly, Plaintiffs have failed to meet their initial burden to prove that summary judgment is appropriate.

### D.     "Card" Purchases.

Plaintiffs also state in their calculation of damages that Miller wrongfully paid $53,016.19 in "card purchase" through the Trust between April 8, 2015 and April 14, 2017.  Plaintiffs fail to specifically detail the charges comprising the $53,016.19.  The court will not scour the briefing and documents to make Plaintiffs' claim.  *See Keenan*, 91 F.3d at 1279.  Plaintiffs, therefore, have failed to raise even a prima facie claim for summary judgment on this issue.

### E.     Travel Expenses.

Plaintiffs have also argued that $169.69 in expenses charged relating to a 2014 trip by Miller made to move property of the Trust, as well as $9,447.97 for expenses related to a similar trip in 2016, were improper and diluted their distribution.  Plaintiffs simply argue that no benefit was ever received from moving these items, and therefore, they were improperly incurred.  Plaintiffs also contend that Beltran owned 50% of these items in any case.

Again, Plaintiffs have failed to develop this claim factually or legally.  Plaintiffs do not discuss either the $169.69 or $9,447.97 charges, or provide any specific detail in support of their claim.  Accordingly, summary judgment is denied.

### F.     Unjustified Funeral Expenses.

Plaintiffs also argue that Miller improperly used Trust assets to pay Check 2598 to Wolf Bay View for $3,295.00, and Check 2847 to Miller for $704.87 for "air fare Dad's funeral." These amounts total $3,999.87, and Plaintiffs contend that 45% of those monies ($1,799.94) should have been distributed to them.  Plaintiffs acknowledge that Wolf Bay View is a funeral home located in

Fairhope, Alabama, but argue that these payments cannot be justified because there was no funeral

for Mr. Miller in Alabama.  Plaintiffs further argue that Miller's airfare to the funeral was not a

necessary expense.

Plaintiffs once again simply make a statement without providing any evidence to place the

factual question at issue for purposes of their summary judgment motion.  In fact, their Motion does

not even raise the specific challenge. Rather, Plaintiffs make their challenge in their exhibit for the

calculation of damages, and it simply states: "While both the will and the trust agreement provided

for payment of funeral expenses, Miller's airfare to the funeral was not a necessary expense, and per

her discovery responses, no funeral service took place around the date of the check." Adv. ECF No.

16-6 at 1.  This statement does not comprise evidence necessary to support summary judgment.

### G.    Attorney Fees Awarded by the Alabama Court.

Plaintiffs also argue that the Alabama state court's award of $24,000 in attorney fees as

sanctions against Miller is also nondischargeable under § 523(a)(4).  Plaintiffs argue that the fees

were properly awarded against Miller under Alabama law.  They point to authority to establish that

Alabama permits an award of attorney fees where a trustee commits misfeasance.  Plaintiffs appear

to argue that they are entitled to both the $24,000 awarded as part of the Alabama judgment and

additional fees.   Attorney fees that flow from a debtor's nondischargeable conduct are also

considered to be a nondischargeable debt. *Cohen v. de la Cruz,* 523 U.S. 213, 223 (1998) (attorney's

fees incurred as a result of debtor's fraud were nondischargeable under § 523(a)(2)); *Correia-Sasser*

*v. Rogone (In re Correia-Sasser),* 2014 WL 4090837, at *13 (B.A.P. 9th Cir. Aug. 19, 2014)

(applying *Cohen* to attorney fees related to nondischargeable debt under § 523(a)(4)).

Plaintiffs, however, have not proven misfeasance, or even that the Alabama judgment was

for defalcation.  The only evidence presented on summary judgment regarding the Alabama action

11

were filings from the state court action: (1) the Complaint and Motion for Temporary Restraining Order; (2) the Order dated October 26, 2016, approving the settlement agreement reached at mediation; (3) the Rule 60(b) Motion for Relief from Judgment or Order; (4) the Order dated January 18, 2017, approving the settlement agreement with revisions to the prior order; (5) the Order on Rule 60(b) Motion; (6) the Motion for Sanctions; and (7) the Order dated November 2, 2018, entering default judgment and awarding Plaintiffs $24,000 in attorney fees. None of these documents establish that the judgment was entered for Miller's defalcation while acting as trustee.

The Alabama complaint submitted by Plaintiffs sought removal of Miller as trustee for breach of her duties of trust and failure to administer the Trust effectively. Such claims do not lead inexorably to a conclusion of either misfeasance or defalcation. Indeed, Plaintiffs have assiduously avoided the default judgment entered by the Alabama state court, and the basis for a monetary award on default judgment has never been explained. The two page motion for sanctions provides no insight as to the basis for the default judgment or the award of fees. It states only that Miller refused to respond to discovery. Finally, the order awarding default judgment and attorney fees simply stated that "[t]he Plaintiff's [sic] distribution from the final settlement of the Family Trust was materially and substantially less than what the Defendant represented it would be at mediation, and upon which the Settlement Agreement was based." Adv. ECF No. 17-12 at 1. That order also confirmed that award of attorney fees was "[b]ased upon the Defendant's refusal to respond to discovery...." *Id*. at 2.

Plaintiffs offer no explanation or basis in the record for why these attorney fees are nondischargeable. They have simply established that they have been awarded $24,000 in attorney fees in response to a discovery sanction. They have failed to establish that those attorney fees are based upon Miller's defalcation while acting in a fiduciary capacity.

12

**II.    Miller's Cross Motion for Summary Judgment.**

Miller included a cross-motion for summary judgment as part of her opposition.  She cross-moves for summary judgment on Plaintiffs' claims that her debt is nondischargeable under § 523(a)(6) as willful and malicious damages.  Plaintiffs' Complaint makes only the briefest mention of § 523(a)(6).  The exact contours of any such claim are unclear to the court.  Charitably construed, they appear to mirror those stated under § 523(a)(4).  As noted by Miller, claims under § 523(a)(6) require evidence of a willful and malicious intent to injure, not merely to undertake the act that ultimately causes injury.  Given the amorphous nature of Plaintiffs' claims, they can be viewed as mere breach or negligence in failing to properly account for Trust funds.  Such claims do not suffice for purposes of § 523(a)(6).

The court notes that Plaintiffs did attempt to develop their claims under § 523(a)(6) in their reply and opposition to the Cross Motion.  *See* Adv. ECF No. 28, pp. 25-27).  However, the question of intent under § 523(a)(6) is one of fact.  *See Miller v. United States*, 945 F.2d 1464, 1467 (9th Cir. 1991) (quoting *Southern Pacific Transportation Co. v. Lueck*, 535 P.2d 599, 602 (1975) ("[T]he question of wilful conduct is 'essentially a question of fact.'"); *see also Smith Warehouse Holdings, Inc. v. Jaynes (In re Jaynes)*, 489 B.R. 315, 320 (Bankr. S.D. Ga. 2013) ("The standard for determining whether an injury is willful and malicious requires an assessment of whether Debtors' actions were deliberate and intentional, a question of fact."); *Manuel v. City of Jacksonville (In re Blunt)*, 183 B.R. 302, 305 (Bankr. M.D.Fla. 1995) ("Intent is a question of fact which cannot be decided on a summary judgment motion.").  The basic allegations of wrongdoing in Plaintiffs' opposition to the Cross Motion are insufficient to meet the exacting requirement for proving Miller's state of mind for purposes of § 523(a)(6).  *See ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455

13

(Bankr. N.D. Ind. 2001) ("[A] debtor's actions are not automatically labeled malicious simply because they are wrongful.").

For these reasons, the court will deny summary judgment in favor of Miller to the extent Plaintiffs assert any claims under § 523(a)(6) because a genuine issue of material fact exists as to her intent.  To the extent Miller seeks summary judgment in her favor on Plaintiffs' claims under § 523(a)(4), she has failed to address the specific requirements of that Code section in her Cross Motion and therefore any such request is denied.

## Conclusion

For the reasons stated above, the court will grant summary judgment in favor of Plaintiffs as to the existence of damages in the amount of $5,158.79 in Trust assets which Miller used to pay her personal expenses.  The court will, however, require proof at trial that these funds would have been distributed to the beneficiaries.  All other requests for summary judgment made in the Motion and Cross Motion will be denied.  The court will issue separate orders memorializing its ruling.

The court further invites Plaintiffs to file a motion to amend their Complaint to include their argument regarding § 523(a)(6) set forth in their reply and opposition to the Cross Motion.

DATED: June 4, 2021

BY THE COURT

 /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  R. Ullstrom, Esq.
        J. Holland, Esq.
        ECF Participants via NEF

14